IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

In the Matter of the Complaint of
Crounse Corporation, Owner and Operator
of Barge C512, for Exoneration from
or Limitation of Liability                                    Civil Action No. 1:14-cv-154-SA-DAS

MEMORANDUM OPINION

This limitation of liability proceeding arises from a fatal accident occurring on Pickwick Lake in Tishomingo, Mississippi. A boat driven by Carey Downs and occupied by Jeremie Floyd allided into a barge owned by Crounse Corporation at the fleeting area of Muscle Shoals Marine Services, Inc. Floyd's wife and his child's mother ("Floyd Claimants") filed an answer and counterclaim for damages against Crounse.

Before the Court now is the Floyd Claimants' Motion to Increase the Limitation Fund [142], and Crounse Corporation's Motion for Summary Judgment [164]. The Court has considered the motions, responses, rules, and authorities, and finds as follows:

**Factual and Procedural Background**

On August 28, 2014, Crounse tugboat M/V Diane Siegal unloaded eight barges for fleeting at the Muscle Shoals Yellow Creek Fleet on Pickwick Lake, part of the Tennessee-Tombigbee Waterway. Diane Siegal crew members assisted Roy Casteel, the pilot for Muscle Shoals fleeting tug M/V Michael R., in securing the barges to the shore with fleet lines tied to trees on the bank.

During this process, the fleet line intended for the southernmost Crounse vessel—Barge C512—broke. Because the northernmost Crounse barge was already secured to the bank and because the barges were joined together by a separate rigging line, the crews chose to tie Barge

C512 to a fleet line even further south. This caused Barge C512's berth to be closer to the center of the waterway than it would have been had the original fleet line not broken.

More than a day later, just after midnight on August 30, a bass boat driven by Carey Downs allided with Barge C512, resulting in the deaths of Downs and his passenger Jeremy Floyd. Michael Voyles, the post-accident investigator for the Mississippi Department of Wildlife and Fisheries, concluded that Downs was driving in excess of 40 miles per hour.[1]

Investigator Voyles inquired as to whether the barge's location was within the fleeting area granted by the Tennessee Valley Authority ("TVA") permit. Though he was unable to reach a definitive conclusion, the Floyd Claimants' tendered expert David Cole opined that Barge C512 was outside the TVA permit. Two eyewitnesses stated in an affidavit they had noticed barge C512 prior to the accident due to its "unusual placement and its distance away from the bank." In contrasting testimony, Pilot Casteel explained that the Barge was secured within the normal lower fleeting area.

Testimony also varies in relation to the lighting on Barge C512. Russel Stewart, who was fishing near the accident, averred that he noticed mooring lights on the barge "earlier that night." According to the joint affidavit of eyewitnesses Tony and Deborah Forsythe, who owned a condominium in the area, they could see no visible lights on the barge at the time of the accident, although they did see lights on Downs' bass boat. All accounts agree that after the accident, two mooring lights were found on the Barge covered by water. Neither was illuminated.

Crounse commenced this limitation of liability action and tendered an ad interim stipulation as security of $472,938.78, the appraised post-accident value of Barge C512 and its

---

[1] Based on toxicology results from the Mississippi Crime Laboratory, Investigator Voyles also determined that Downs and Floyd were under the influence of alcohol and narcotics at the time of the accident.

cargo. Relevant here, the Floyd claimants' answered contesting the value of the limitation fund and counterclaimed against Crounse for damages.[2]

## Crounse's Motion for Summary Judgment

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Importantly, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276

---

[2] Also pending are the Floyd claimants' third party complaint against Muscle Shoals; Muscle Shoals' counterclaim against the Floyd claimants for contributory negligence; Muscle Shoals' claim for indemnity or contribution against Crounse; Crounse's counterclaim against the Floyd claimants for contributory negligence; and Crounse's counterclaim for indemnity or contribution against Muscle Shoals. Pleadings arising from the death of Carey Downs followed a similar path, but the Downs Claimants have been dismissed by reason of settlement.

F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Negligence*

To establish their claims of negligence under general maritime law, the Floyd Claimants must prove that (a) Crounse owed Floyd a duty, (b) Crounse breached that duty, (c) Floyd sustained injury, and (d) the breach of duty caused Floyd's injury. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010).

Crounse contends that it did not breach any duty owed to Floyd, citing testimony of Muscle Shoals President Michael McDonald and Muscle Shoals Pilot Roy Casteel. Both testified that the responsibility for proper mooring and adequate lighting fell to Muscle Shoals as the fleeting company. According to Crounse, as soon as it delivered its barges into Muscle Shoals' possession, it was relieved of any liability in connection with securing or lighting the barges.

Crounse's argument gains some traction as it relates to the mooring position of Barge C512 along the bank. This Court has held that when a barge was moored at the direction of the fleeting company, the barge's owner was "relieved of its duty to determine whether or not the berth was safe." *Jantran, Inc. v. M/V SANDRA W*, No. 4:90CV201-S-O, 1994 WL 1890905, at *4 (N.D. Miss. Dec. 2, 1994) (citing *Roah Hook Brick Co. v. Erie Railroad Co.*, 179 F.2d 601, 604 (2d Cir. 1950)). Indeed, the Floyd Claimants make no attempt to establish Crounse's liability for improper mooring.

In the same vein, the Supreme Court and lower courts have recognized that a barge that causes harm simply because it is being pushed by a tugboat has violated no duty. *Liverpool, Brazil & River Plate Steam Navigation Co. v. Brooklyn Eastern District Terminal*, 251 U.S. 48, 52, 40 S. Ct. 66, 64 L. Ed. 130 (1919); *In re Bouchard Transp. Co., Inc.*, No. 14 CIV. 1262 PAC,

2014 WL 5025974, at *2 (S.D.N.Y. Sept. 29, 2014); *In re Midland Enters., Inc.*, 296 F. Supp. 1356, 1361-63 (S.D. Ohio 1968). The idea in these types of cases is that the barge as a "passive instrument" of the harm has done nothing wrong. *Liverpool*, 251 U.S. at 52, 40 S. Ct. 66; *The Eugene F. Moran*, 212 U.S. 466, 474, 29 S. Ct. 339, 53 L. Ed. 600 (1909); *Tampa Ship Repair & Dry Dock Co. v. A.P. St. Philip, Inc.*, 1971 A.M.C. 1547, 1553 (5th Cir. 1971). The fault instead lies with the company or vessel that places the barge in harm's way. *Id.*, 40 S. Ct. 66.

In other circumstances, however, the barge may be liable through failure to exercise ordinary care or some other breach of duty. *Horton & Horton, Inc. v. S/S Robert E. Hopkins*, 269 F.2d 914, 917-18 (5th Cir. 1959); *Deep Sea Tankers, Ltd. v. The Long Branch*, 258 F.2d 757, 773-74 (2d Cir. 1958); *Bouchard*, 2014 WL 5025974, at *2; *Cody v. Phil's Towing Co.*, 247 F. Supp. 2d 688, 692-93 (W.D. Pa. 2002). Critically here, inadequate lighting is an oft-cited example of the type of fault that may inhere to the barge. *See Deep Sea Tankers*, 258 F.2d at 773-74 ("If a vessel in tow of a negligent tug is found at fault, for absence of lights for example, the value of both vessels must be included in the limitation fund."); *Complaint of Allied Towing Corp.*, 1978 A.M.C. 2484, 2491 (E.D. Va. 1978) (same). According to Tony and Deborah Forsythe, no visible lighting was displayed on Barge C512 immediately prior to the fatal accident. This testimony may be sufficient to support a finding of negligence attributable to Barge C512.

Furthermore, evidence that lack of lighting on Barge C512 violated a Coast Guard regulation could make it more difficult for Crounse to escape liability. Under what's known as the Pennsylvania rule—similar to negligence *per se*—"if a vessel is involved in a collision as a result of a statutory violation intended to prevent collisions, then the burden shifts to the 'vessel in derogation of a statutory rule' to show that this violation could not have been a cause of the

accident." *Florida Marine Transporters, Inc. v. Sanford*, 255 F. App'x 885, 888 (5th Cir. 2007) (quoting *In re Mid-South Towing Co.*, 418 F.3d 526, 534 (5th Cir. 2005)). Though the Pennsylvania rule is stated in terms of statutory violations, it applies equally to violations of Coast Guard regulations. *Skidmore v. Grueninger*, 506 F.2d 716, 724 (5th Cir. 1975); *Horton & Horton*, 269 F.2d at 917, 918 & n.8.

At the time of the accident, the Coast Guard's Inland Navigational Rule 30 provided that "[b]arges moored in groups more than two barges wide" shall display "two unobstructed all-round white lights of an intensity to be visible for at least 1 nautical mile . . . ." Rule 30(h), (i). A "group of barges at anchor or made fast to one or more mooring buoys or other similar device" may alternately comply with Rule 30 by arranging lights on the "outboard corners" of "[a]ny barge that projects from a group formation . . . ." Rule 30(j).

The Crounse group of barges that included Barge C512 was four vessels long at its longest point and three vessels wide at its widest point, thus triggering applicability of Rule 30.[3] Barge C512 projected from the group formation as the southernmost barge in the fleeting area. In view of the testimony that Barge C512's lights were not functioning, the Floyd Claimants have produced sufficient evidence of a violation of Rule 30 for purposes of the Pennsylvania Rule.

The burden shifts to Barge C512 as the "vessel in derogation of a statutory rule" to demonstrate that the Rule violation could not have caused the accident. *Mid-South Towing Co.*, 418 F.3d at 534. Crounse has not satisfied its burden in this regard. Indeed, Investigator Voyles

---

[3] An expert tendered by Crounse opines that the regulation does not apply because Barge C512 was fastened near the bank and no vessels were placed in front of the barge further into the waterway. This opinion erroneously focuses on the width of Barge C512's isolated lane, but the Coast Guard regulation measures width of the entire "group formation." Rule 30(h); *Skidmore*, 506 F.2d at 725 (applying similar lighting regulation and focusing on width of the group as a whole).

explained when deposed that the absence of lighting on the barge could be a significant contributing factor to the accident.

Finally, the fact that the crew of the Diane Siegal played no role in lighting the barges does not mandate entry of summary judgment. Where there is a statutory violation for improper lighting, the Fifth Circuit has held the barge itself accountable, in addition to any other negligent parties. *Horton & Horton*, 269 F.2d at 918; *see also Seacarriers Enterprises, Ltd. v. Tugboat "LADY MICHELLE"*, No. Civ. A. 92-343, 1992 WL 28073, at *3 (E.D. La. Feb. 4, 1992). This is consistent with the legal fiction created by United States *in rem* maritime jurisdiction, in which a vessel "may be a wrongdoer and may be held liable, although the owners are not personally responsible . . . ." *The Eugene*, 212 U.S. at 473, 29 S. Ct. 339.

For the foregoing reasons, the Court finds genuine issues of material fact on the Floyd Claimants' claims against Crounse. Therefore, summary judgment is DENIED.

**Floyd Claimant's Motion to Increase Fund**

The Limitation Act "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446, 121 S. Ct. 993, 148 L. Ed. 2d 931 (2001) (citing current 46 U.S.C. §§ 30501-30512). Supplementary Admiralty Rule F establishes the procedural framework for limitation actions. At the initiation of this suit and pursuant to Rule F(1), Crounse tendered as security an ad interim stipulation of more than $470,000 representing the post-accident value of Barge C512 and its cargo. Rule F(7) permits a claimant to challenge the security or funds deposited through a motion to increase, which Floyd Claimants have filed here. They argue that in addition to the value of Barge C512, the value of

7

the Diane Siegal should be included in the fund, increasing their available recovery to $3,000,000.[4]

In "pure tort" cases such as this, "only the offending vessel itself need be tendered for limitation purposes." *In re AEP River Operations, LLC*, 838 F. Supp. 2d 573, 575 (S.D. Tex. 2012) (citing *Liverpool*, 251 U.S. at 53, 40 S. Ct. 66); *see also In re Drill Barge No. 2*, 454 F.2d 408, 410 (5th Cir. 1972). Thus, "when a casualty occurs and several vessels of common ownership are present, the *in rem* liability of each vessel depends on whether she did anything wrong." *In re Complaint of Miller Marine Servs., Inc.*, 25 F. Supp. 3d 215, 223-24 (D. Conn. 2014).

With these principles and the Court's summary judgment discussion in view, it is unlikely that the Diane Siegal will be included in the limitation fund. Its responsibility for placement of Barge C512 within the waterway is doubtful. As discussed above, the Diane Siegal's crew was apparently following instructions from Muscle Shoals' fleeting tug Michael R. with regard to placement and was likely "relieved of its duty to determine whether or not the berth was safe." *Jantran, Inc.*, 1994 WL 1890905, at *4 (citing *Roah Hook Brick Co.*, 179 F.2d at 604). Furthermore, the testimony demonstrates that Diane Siegal had no contractual responsibility for lighting its barges. Indeed, Crounse's summary judgment motion is denied chiefly because Barge C512 *itself* may be the active instrument of harm for lighting purposes; not the Diane Siegal. *See Horton & Horton*, 269 F.2d at 918. Thus, for the time being, the Court denies the Floyd Claimants' request to include the Diane Siegal in the limitation fund.

---

[4] Floyd Claimants initially argued that the *Flotilla* doctrine requires inclusion of the Diane Segal or the other seven Crounse barges moored with Muscle Shoals on August 30. They have since withdrawn this argument, recognizing that in pure tort cases, the *Flotilla* doctrine does not apply. *In re Libel of Kristie Leigh Enterprises, Inc.*, 168 F.3d 206, 209 n.3 (5th Cir. 1999) (citing *Brown & Root Marine Operators*, 377 F.2d 724, 727 (5th Cir. 1967)).

Nonetheless, courts have recognized that the best time to make a final decision about increasing the limitation fund is at trial.[5] If Crounse is exonerated from liability, there will be no need to increase a fund to which the Floyd Claimants have no claim. If the Court finds Crounse is responsible and had knowledge or privity of the relevant conduct, Crounse will not be entitled to the limitation it seeks, and the size of the fund will be irrelevant. 46 U.S.C. § 30505(b); *In re Mississippi Limestone Corp.*, No. 4:09-CV-00036-SA-DAS, 2010 WL 4174631, at *2 (N.D. Miss. Oct. 7, 2010) (citing *Farrell Lines Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir. 1976)). Either result could moot the Floyd Claimant's request to increase the current fund.

For these reasons, the Motion to Increase the Limitation Fund [142] is DENIED WITHOUT PREJUDICE. The Floyd Claimants' request may be re-urged at trial if necessary.

**Conclusion**

For the reasons set forth above, Crounse's Motion for Summary Judgment [164] is DENIED, and the Floyd Claimants' Motion to Increase the Limitation Fund [142] is DENIED WITHOUT PREJUDICE.

SO ORDERED, this 27th day of July, 2016.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

[5] *See Miller Marine*, 25 F. Supp. 3d at 227-28; *World Tanker Carriers Corp. v. M/V Ya Mawlaya,* Nos. CV 94-4190, 95-0396, 95-0511, 95-1151, 95-3295, 1996 WL 20874, at *3 (E.D. La. Jan. 18, 1996), *rev'd on other grounds*, 99 F.3d 717 (5th Cir. 1996) (citing Benedict on Admiralty, V.3 § 67); *see also In re Massman*, No. 4:12-CV-1665, 2013 WL 718885, at *10 (E.D. Mo. Feb. 27, 2013); *In re Marquette Transp. Co.*, Nos. 104374, 10-4377, 2011 WL 1486119, at *3 (E.D. La. Apr. 18, 2011)).