IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

IN RE: CROUNSE                                      CIVIL ACTION NO. 1:14-cv-154-SA-DAS

MEMORANDUM OPINION

Muscle Shoals ("MSMS") has requested summary judgment regarding third party complaints made against them by Jeremie Floyd's wife and his child's mother ("Floyd Claimants") [197].

*Factual and Procedural Background*

On August 28, 2014, Crounse tugboat M/V Diane Siegal unloaded eight barges for fleeting at the Muscle Shoals Yellow Creek Fleet on Pickwick Lake, part of the Tennessee Tombigbee Waterway. Diane Siegal crew members assisted Roy Casteel, the pilot for Muscle Shoals fleeting tug M/V Michael R., in securing the barges to the shore with fleet lines tied to trees on the bank.

During this process, the fleet line intended for the southernmost Crounse vessel—Barge C512—broke. Because the northernmost Crounse barge was already secured to the bank and because the barges were joined together by a separate rigging line, the crews chose to tie Barge C512 to a fleet line even further south. This caused Barge C512's berth to be closer to the center of the waterway than it would have been had the original fleet line not broken.

More than a day later, just after midnight on August 30, a bass boat driven by Carey Downs allided with Barge C512, resulting in the deaths of Downs and his passenger Jeremie Floyd. Michael Voyles, the post-accident investigator for the Mississippi Department of Wildlife and Fisheries, concluded that Downs was driving in excess of 40 miles per hour.[1]

---

[1] Based on toxicology results from the Mississippi Crime Laboratory, Investigator Voyles also determined that Downs and Floyd were under the influence of alcohol and narcotics at the time of the accident.

Investigator Voyles inquired as to whether the barge's location was within the fleeting area granted by the Tennessee Valley Authority ("TVA") permit. Though he was unable to reach a definitive conclusion, the Floyd Claimants' tendered expert David Cole opined that Barge C512 was outside the TVA permit. Two eyewitnesses stated in an affidavit they had noticed Barge C512 prior to the accident due to its "unusual placement and its distance away from the bank." In contrasting testimony, Pilot Casteel explained that the barge was secured within the normal lower fleeting area.

Testimony also varies in relation to the lighting on Barge C512. Russel Stewart, who was fishing near the accident, averred that he noticed mooring lights on the barge "earlier that night." According to the joint affidavit of eyewitnesses Tony and Deborah Forsythe, who owned a condominium in the area, they could see no visible lights on the barge at the time of the accident, although they did see lights on Downs' bass boat. By all accounts, after the accident, two mooring lights were found on the barge covered by water. Neither was illuminated.

MSMS moved for summary judgment regarding liability for the allision. The Floyd claimants answered, arguing that factual inconsistencies preclude summary judgment, and that fault truly lies with MSMS.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Importantly, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash*., 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

*Analysis and Discussion*

"To establish maritime negligence, a plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'" *Canal Barge Co., Inc. v. Torco Oil Co.,* 220 F.3d 370, 376 (5th Cir. 2000) (quoting *In re Cooper/T. Smith,* 929 F.2d 1073, 1077 (5th Cir. 1991)). "Whether a defendant owes a plaintiff a legal duty is a question of law." *Id.* (internal quotation marks omitted). As to causation, in maritime collision cases "fault which produces liability must be a contributory and proximate cause of the collision, and not merely fault in the abstract." *Inter–Cities Nav. Corp. v. U.S.,* 608 F.2d 1079, 1081 (5th

Cir. 1979). "To give rise to liability, a culpable act or omission must have been 'a substantial and material factor in causing the collision,'" and but-for causation is insufficient. *American River Transp. Co. v. Kavo Kaliakra SS,* 148 F.3d 446, 450 (5th Cir.1998) (quoting *Inter Cities*, 608 F.2d at 1081).

*Legal Framework for Cases Involving the Oregon and Pennsylvania Rules*

This case implicates two common law burden-shifting presumptions invoked when a moving vessel allides with a stationary vessel. First, the *Oregon* Rule creates a rebuttable presumption of fault that shifts the burden of production and persuasion to a moving vessel who, under its own power, allides with a stationary object. *The Oregon*, 158 U.S. 186, 197, 15 S.Ct. 804, 809, 39 L. Ed. 943 (1895). The *Oregon* Rule must be properly confined to the issue of breach only—not "causation (either in fact or legal cause) or the percentages of fault assigned to the parties adjudged negligent." *In re Mid-S. Towing Co.*, 418 F.3d 526, 532 (5th Cir. 2005).

This presumption may be rebutted by showing, by a preponderance of the evidence, either that the allision was the fault of the stationary object, that the moving vessel acted with reasonable care, or that the allision was an unavoidable accident. *Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 605 (5th Cir. 2010).

Second, under the *Pennsylvania* Rule,

> when ... a ship at the time of a[n allision] is in actual violation of a statutory rule intended to prevent [allisions], it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been.

*The Steamship Pennsylvania v. Troop,* 86 U.S. 125, 19 Wall. 125, 22 L.Ed. 148 (1873).

The Fifth Circuit has stressed that the *Pennsylvania* Rule shifts the burden of proof as to *causation* to the statutory offender, but it does not *ipso facto* impose liability. *Pennzoil Prod. Co. v. Offshore Exp., Inc.,* 943 F.2d 1465, 1472 (5th Cir. 1991); *Florida East Coast Ry. Co. v. Revilo Corp.,* 637 F.2d 1060, 1065-66 (5th Cir. 1981); *Green v. Crow,* 243 F.2d 401, 403 (5th Cir. 1957).

MSMS argues that the claimants cannot meet the burden of proving absence of fault as required by the *Oregon* Rule, as their vessel was fully powered while the MSMS vessel was stationary. Additionally, MSMS contends that Plaintiff was in violation of several Inland Navigational Rules, including those requiring a look-out and those forbidding boating at excessive speeds. *See* 33 C.F.R. §§ 83.05—83.06. Furthermore, MSMS argues that these violations were the cause of the allision. MSMS alleges that these violations were further compounded by the intoxication of the occupants of the Claimant's vessel, and that even though Floyd was not the operator of the Skeeter boat, he was the owner of the vessel, and is therefore held to be responsible for obeying the "rules of the road." Therefore, MSMS argues that the *Pennsylvania* and *Oregon* Rules should apply to Floyd claimants.

Floyd claimants, conversely, also assert the *Pennsylvania* Rule by alleging that MSMS was in violation of statute as to their permit and required lighting.

Where both parties to a collision are guilty of statutory fault, the heavy presumption that the fault of each contributed to the accident may be rebutted by proof that, in fact, the fault of either of the parties was the sole cause of the accident or, instead, not a substantial contributing cause thereof. *Otto Candies, Inc. v. M/V Madeline D*, 721 F.2d 1034, 1036 (5th Cir. 1983). In other words, if each vessel successfully invokes the *Pennsylvania* Rule against its opponent, then each vessel must overcome a presumption of fault by showing its violation could not have been a

5

cause of the allision. Therefore, the *Pennsylvania* presumption must be applied to both parties, while the *Oregon* presumption only applies to the Floyd Claimants.

However, the *Oregon* Rule speaks explicitly to a presumed breach of duty on the part of the Floyd Claimants, and is not a presumption regarding the question of causation. *Mid–South Towing,* 418 F.3d at 532. The *Pennsylvania* Rule speaks to *causation* for both parties. See *United States v. Reliable Transfer Co*., 421 U.S. 397, 411, 95 S. Ct. 1708, 1716, 44 L. Ed. 2d 251 (1975).

Even if Floyd Claimants cannot rebut the presumption that Floyd breached a duty pursuant to the *Oregon* Rule, MSMS has not established causation pursuant to the *Pennsylvania* Rule. This is because there are substantial issues in material facts regarding the lighting of the vessel and whether it was located within its permitted area. Thus, the parties have not established statutory violations, and furthermore, they have not proved the opposing party's violations were the sole cause of the accident.

Accordingly, summary judgment as to any of these claims is premature.

## *Conclusion*

As there remain significant questions of material fact concerning the statute violations giving rise to use of the *Pennsylvania* Rule, causation has not been established. Therefore, summary judgment is DENIED.

SO ORDERED, on this 13th day of September, 2016.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE